OPINION OF THE COURT
Leah R. Marks, J.
Delores B. is a six-year-old child whose father, Willie B., was already incarcerated at the time of the child’s birth. This case is concerned only with the parental rights of Willie B. who is serving a term of 25 years to life in New York State for murder. Under the law he has a right to prevent his child’s adoption unless grounds exist to terminate that right.
The petitioning agency has brought an action to terminate his legal rights of custody and guardianship on the basis of his "permanent neglect”[1] of the child.
Until January 1, 1984, a prisoner serving such a sentence was deprived of civil rights as a result of incarceration to the extent that the imprisoned parent’s consent to an adoption was unnecessary. In attempting to be fair to the prisoner who might some day be able and willing to care for his or her own child once again, the State Legislature may have sentenced this child to a life without any chance to have a real family.
Alleged reforms in the laws were passed in order to protect a parent from termination of parental rights solely on the *485 basis of incarceration.[2] Certainly those who pressed for the legislation intended to protect someone who might be in prison for a fairly short time and intended to permit adoption when the parent-child relationship had ceased to exist.
However, the facts of this case lead to the conclusion that adoption can be prevented by a prisoner who expresses real interest in his child and maintains contact insofar as possible although he has never been and can never be a real parent no matter how great his desires.
It has become clear in this court in many similar cases that the amended statutes affecting prisoners’ rights are not reforms for the children. This court sees incarcerated parents regularly, and it is clear that such a parent is likely to express great interest in a child and fight for his or her right to prevent the child’s having a full life separate from that parent. Often this happens because the imprisoned parent has nothing else to do. It may happen because the parent loves the child and cannot objectively assess the effects of that love. However real the concern for the child may be, a parent who will never be an active parent may prevent the child’s ever having one.
The petitioner asks the court to find that, during the period of incarceration and prior to the filing of this petition on July 19, 1984, the prisoner has failed to plan for the future of his child and must therefore be found to have permanently neglected the child.
This court has sworn to uphold the laws of the State of New York and finds this one difficult to stretch that far no matter how unfair to the child involved.
In fulfilling his duties Mr. B. has written the child and the agency in relation to the child at regular intervals. He expressed his interest in the child and visited with the child in prison whenever the possibility was realistically offered. Mr. B. planned to have relatives care for the child because of his own situation. That plan proved impossible to effect.
Certainly the agency was diligent in its efforts to help the respondent, although nothing except his release from prison could be effective in assisting him to plan realistically for the future of the child. The agency invited Mr. B. to attend planning meetings although he was in prison at the time. The *486 agency made his daughter available to him in prison from time to time. The agency investigated relatives who might have helped.
Mr. B. has permanently neglected his child if he has failed for more than one year after this child’s birth "substantially and continuously or repeatedly to maintain contact with or plan for the future of the child * * * [despite] the agency’s * * * efforts”.[3] The law requires that his plan be realistic and feasible, one that is "necessary to provide an adequate, stable home and parental care for the child within a [reasonable] period of time * * * under the financial circumstances available to the parent.”[4]
The petitioner understandably wishes a finding of permanent neglect because Mr. B. did not have a family able to take care of the child and could not take care of the child himself. Therefore, the petitioner maintains his plan is unrealistic and unreasonable and does not come within the meaning of "planning” as defined under the law. Mr. B. suggests that the child may remain in foster care continuously, and he is willing to grant the right to care for the child to the present foster parents. He will not permit the child’s adoption.
The State Legislature’s whole purpose in amending laws regarding a prisoner’s parental rights was "[t]o eliminate incarceration as the sole basis for the termination of parental rights and to provide a due process procedure for determining whether an incarcerated parent has permanently neglected his or her child.”[5] If one were to utilize the petitioner’s definition of realistic planning, no long-term prisoner would be realistically planning for the return of his or her own child. That may be logical, but the Legislature has made no such statement. Few prisoners have families ready and able to take care of the child. If this court were to find that Mr. B. permanently neglected his child although he did all that any realistic imprisoned person could be expected to do, the court would be disobeying the law. Nowhere does the law require any parent, incarcerated or not, to be fully successful in planning.
*487 The petition is dismissed. However, this dismissal in no way indicates that this court believes such a dismissal is fair to the child or falls within the general purpose of termination statutes which are supposed to ensure a permanent family for each child. Every child has a right to the possibility of finding a permanent family. However, the amendments of the law that went into effect on January 1, 1984, deny that right to Delores whose father will not let her have one.
It was not argued in this case, but it should be noted that some interpret the legislation’s enactment clause to require exclusion of the whole period of incarceration prior to January 1, 1984, in defining the year of permanent neglect. If valid, that interpretation would lead to a dismissal on the ground that one year of permanent neglect had not passed prior to filing of this petition on July 19, 1984.
It is hoped that the law as it stands will not stand for very long and that new changes will be retroactive so that Delores may have her freedom to find a permanent family.

. That is a legal concept defined by Social Services Law § 384-b (7).

. Laws of 1983 (ch 911), an act to amend the Social Services Law, the Domestic Relations Law and the Correction Law, in relation to the termination of the parental rights of an incarcerated parent.

. Social Services Law § 384-b (7) (a).

. Social Services Law § 384-b (7) (c).

. Memorandum of Executive Department, Council Children and Families, explaining the purpose of the bill (L 1983, ch 911), and part of the legislative history of the bill which went into effect on January 1, 1984. (1983 McKinney’s Session Laws of NY, at 2706.)